IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL S. GILBERT,** | **:** | |
| **Plaintiff,** | **:** | **Case No. 2:07-cv-624** |
| v. | **:** | **Judge Holschuh** |
| **THE CORRECTION RECEPTION CENTER, et al.,** | **:** | **Magistrate Judge Kemp** |
| | **:** | |
| **Defendants.** | | |
| | **:** | |

**MEMORANDUM OPINION & ORDER**

*Pro se* Plaintiff Michael Gilbert, a former employee of the Correction Reception Center ("CRC"), filed suit against CRC, CRC employees Lieutenant Lewis, Lieutenant Jacqueline Foster, Personnel Officer Burnetta Holmes, Captain Donna Day, CRC Warden Virginia Lamneck, the Ohio Department of Rehabilitation and Corrections ("ODRC"), the Ohio Civil Rights Commission ("OCRC"), and Ohio Civil Service Employees Association AFSCME Local 11 AFL-CIO ("OCSEA"). This matter is currently before the Court on three pending motions: (1) OCSEA's motion to dismiss (Doc. 20); (2) OCRC's motion to dismiss (Doc. 21); and (3) a motion for judgment on the pleadings filed by Defendants CRC, ODRC, Lamneck, Day, Foster, Lewis, and Holmes (collectively "the Prison Defendants") (Doc. 22).

**I.	Background and Procedural History**

Plaintiff, who is African-American, was employed at CRC, a state prison facility, for approximately ten years in various positions. After he was terminated on January 9, 2003, he filed numerous charges of race discrimination and retaliation with the OCRC. He then filed

several lawsuits in this Court, all related to his termination.[1]  Each suit was concluded in favor of the defendants.  Plaintiff subsequently filed new charges of retaliation.  After receiving a "no probable cause" determination from the OCRC, he filed this lawsuit against CRC, ODRC, Lieutenant Lewis, Lieutenant Jacqueline Foster, Captain Donna Day, Burnetta Holmes, Warden Virginia Lamneck, OCRC, and OCSEA.

     Essentially, Plaintiff alleges that Defendants have conspired to retaliate against him because he previously filed complaints and lawsuits against them.  According to Plaintiff, the Prison Defendants have "blacklisted" him, making negative, false statements about him to prospective employers.  More specifically, Plaintiff alleges that when Cessili Slaughter, a prospective employer, called CRC to obtain a reference, several CRC employees discouraged her from hiring him.  Lieutenant Lewis allegedly said, "Two thumbs down for Gilbert," even though Lewis had never supervised Gilbert or worked with him.  Lieutenant Foster allegedly laughed in a devious manner and said, "Mr. Gilbert will always take issue with supervisors and administration if he does not like or agree with their instructions."  CRC's Personnel Officer Burnetta Holmes also allegedly laughed and, in response to Ms. Slaughter's inquiry about whether CRC would rehire Gilbert, said, "Michael Gilbert has a special code on his personnel record, it is BA2." According to Plaintiff, "BA2" is a code used for an employee who has committed a crime or has been fired for inappropriate behavior. Plaintiff alleges that although he complained about these comments to Warden Ginny Lamneck and ODRC, they did nothing to discipline Lewis, Foster, or Holmes or to stop the retaliation.  Plaintiff further alleges that, by

---

[1] See Gilbert v. ODRC, Case No. 2:04-cv-13, Gilbert v. CRC, Case No. 2:04-cv-158, Gilbert v. OCSEA, Case No. 2:04-cv-660, Gilbert v. ODRC, Case No. 2:05-cv-17.

blacklisting him, the Prison Defendants have discriminated against him on the basis of race, treating him less favorably than they treated Lieutenant Trajenica, a white employee who was terminated by CRC but was not blacklisted.

Plaintiff next alleges that OCSEA conspired with prison officials to deny him fair and impartial union representation. According to Plaintiff, OCSEA has represented white union members even after they have been terminated if they have an active grievance on file and there are continuing violations. OCSEA, however, has refused to continue to represent Plaintiff; even though Plaintiff insists that he filed a grievance, OCSEA claims that it has no record on file.

Finally, Plaintiff alleges that when he filed his complaint of retaliation with OCRC, the agency failed to conduct an appropriate investigation. Although he offered to present a notarized affidavit from Ms. Slaughter, OCRC concluded that there was no probable cause to believe that the defendants had engaged in an unlawful discriminatory practice. Plaintiff contends that OCRC has conspired with the other Defendants to violate his civil rights.

Plaintiff's Complaint does not clearly set forth the causes of action he is asserting against the various defendants. Nor does it specify whether the individual defendants are being sued in their official capacities, their individual capacities, or both.[2] Nevertheless, because Plaintiff is proceeding *pro se*, the Court and the opposing parties must construe his Complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that complaints filed by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers.").

---

[2] As the Supreme Court noted in Kentucky v. Graham, 473 U.S. 159 (1985), a claim brought against a government employee in his or her *individual* capacity seeks to hold the employee personally liable for actions taken under color of state law. However, a claim brought against a government employee in his or her *official* capacity is the equivalent of a claim brought against the governmental entity itself. Id. at 165-66.

Defendants have construed Plaintiff's Complaint to include claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, claims of conspiracy to violate civil rights under 42 U.S.C. § 1985(3), and state law claims of intentional infliction of emotional distress, defamation, blacklisting, and denial of fair and impartial union representation. Plaintiff has not objected to Defendants' construction of his Complaint.

Defendants have moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and/or failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff completely fails to address the substance of any of their arguments. He argues only that this is a "complex matter" and, as a victim of discrimination and a *pro se* litigant, he is "entitled to bring the matter to the attention of the Court and have the issues decided upon, by a Judge or Jury." (Resp. at 2). Plaintiff also requests additional time to secure funds so that he can hire an attorney. The Court, however, has already granted Plaintiff a long extension of time. Plaintiff's request for additional time is therefore denied.

**II.     Discussion**

    **A.     Standard of Review**

        **1.     Federal Rule of Civil Procedure 12(b)(1)**

Federal courts are not courts of general jurisdiction. They have only the power authorized by Article III of the Constitution and conferred by acts of Congress. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Jurisdiction is a prerequisite to a court ruling on the merits of a case. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining

4

to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869).

Motions to dismiss for lack of subject-matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). Such challenges come in two forms: facial challenges and factual challenges. In a facial challenge, a defendant contends that, even accepting the material allegations of the complaint as true and construing them in a light most favorable to the nonmoving party, the court still lacks subject-matter jurisdiction over the claim. Singleton v. United States, 277 F.3d 864, 870 n.4 (6th Cir. 2002) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). If the moving party makes a factual attack, when determining whether subject-matter jurisdiction exists the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Cameron v. Children's Hosp. Med. Ctr., 131 F.3d 1167, 1170 (6th Cir. 1997) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. In either case, the burden is on the party asserting jurisdiction to demonstrate that subject-matter jurisdiction exists. See Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).

    **2.**  **Federal Rule of Civil Procedure 12(b)(6)**

  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, <u>Roth Steel Prods. v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184 (2005) (citing <u>Scheuer v. Rhodes</u>, 4l6 U.S. 232, 236 (1974)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  <u>Mayer v. Mylod</u>, 988 F.2d 635, 638 (6th Cir. 1993).

  The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Lewis v. ACB Business Serv., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998).  A complaint need not set down in detail all the particularities of a plaintiff's claim.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original).  Bare assertions of legal conclusions are insufficient.  <u>See id.</u>; <u>Allard v. Weitzman</u> (<u>In re DeLorean Motor Co.</u>), 991 F.2d 1236, 1240 (6th Cir. 1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough.  <u>Bell

Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1965 (2007).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

**B.     Prison Defendants' Motion for Judgment on the Pleadings**

As noted earlier, Plaintiff's Complaint alleges that CRC, CRC Warden Ginny Lamneck, and CRC employees Lieutenant Lewis, Lieutenant Jacqueline Foster, and Burnetta Holmes (collectively "the Prison Defendants") discriminated against him on the basis of race, retaliated against him for exercising his civil rights, conspired to "blacklist" him, defamed him, and provided false, negative statements to prospective employers, causing him emotional distress and

preventing him from obtaining a job.[3]  In his prayer for relief against the Prison Defendants, Plaintiff seeks compensatory damages, punitive damages, formal letters of apology, a letter of high recommendation issued to him each year for life, termination of all employees who participated in the alleged blacklisting, and the establishment of an independent committee to run CRC's internal Equal Employment Opportunity Department.  The Prison Defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[4]

   1.   **Title VII**

The Court turns first to Plaintiff's allegations that the Prison Defendants violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of race and by retaliating against him for having previously filed charges and lawsuits against them.  Pursuant to Title VII, it is unlawful for an employer to "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It is also unlawful for an employer to retaliate against an employee who has filed charges of discrimination.  42 U.S.C. § 2000e-3(a).

Defendants Lamneck, Foster, Lewis, and Holmes argue that Plaintiff's Title VII

---

[3] Although Captain Donna Day is also listed as a defendant in the caption of the Complaint, the Complaint contains no specific allegations regarding her and seeks no specific relief against her.  The Court therefore dismisses all claims against her.

[4] Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted.  See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999).

individual capacity claims must be dismissed because they cannot be held personally liable for violations of the statute. The Court agrees. In <u>Wathen v. General Electric Company</u>, 115 F.3d 400, 405 (6th Cir. 1997), the Sixth Circuit held that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." The Court therefore dismisses Plaintiff's Title VII claims brought against the CRC employees in their individual capacities.

However, Plaintiff's Title VII claims against CRC, ODRC, and the CRC employees sued in their official capacities remain pending. The Prison Defendants have not moved to dismiss these claims. Moreover, these claims are not barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment prohibits federal courts from adjudicating claims for money damages filed by individuals against a state or a state agency unless the state has consented to suit or Congress has validly abrogated the state's immunity pursuant to § 5 of the Fourteenth Amendment. <u>See</u> <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62 (2000). Since Congress validly abrogated the states' immunity when it enacted Title VII, <u>see</u> <u>Freeman v. Michigan Dep't of State</u>, 808 F.2d 1174, 1177 (6th Cir. 1987) (<u>citing</u> <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1976)), the Eleventh Amendment does not bar Plaintiff's Title VII claims against CRC, ODRC, or the CRC employees sued in their official capacities.

        **2.**     **42 U.S.C. § 1985(3)**

The Court turns next to Plaintiff's claim, brought pursuant to 42 U.S.C. § 1985(3), that the Prison Defendants conspired to violate his civil rights. That statute provides an avenue of recovery when "two or more persons . . . conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."

Courts have consistently held that the Eleventh Amendment bars conspiracy claims brought against state agencies under 42 U.S.C. § 1985.  See Ferritto v. Ohio Dep't of Highway Safety, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991); Amadasu v. Donovan, No. 1:01-cv-210, 2006 WL 1401648, at *11 (S.D. Ohio May 18, 2006).  Moreover, this jurisdictional bar to claims against state agencies applies regardless of whether a plaintiff is seeking money damages or injunctive relief.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Quern v. Jordan, 440 U.S. 332, 339-42 (1979).

The Eleventh Amendment does not bar the § 1985(3) claims brought against the Prison Defendants in their individual capacities.  See Wells v. Board of Trustees of the Calif. State Univ., 393 F. Supp. 2d 990, 996 (N.D. Cal. 2005).  The Prison Defendants argue, however, that these claims are barred by the intra-corporate conspiracy doctrine.  According to this doctrine, "[b]ecause a corporation cannot conspire with itself, employees of the company cannot be liable for a conspiracy."  Johnson v. Hills and Dales General Hospital, 40 F.3d 837, 838 (6th Cir. 1994).  The problem with this argument is that Plaintiff has alleged that the Prison Defendants also conspired with OCSEA and OCRC to violate his civil rights.  Because the alleged conspiracy involved at least three different agencies, the intra-corporate conspiracy doctrine is not applicable.

Nevertheless, the Court concludes that dismissal of Plaintiff's § 1985(3) claim is warranted because Plaintiff has failed to state a claim upon which relief can be granted.  In order to succeed on a claim under § 1985(3), a plaintiff must establish a conspiracy involving two or more persons for the purpose of depriving him of the equal protection of the laws, and an act in furtherance of the conspiracy which causes injury or a deprivation of a right or privilege of a

United States citizen.  The plaintiff must also prove that the conspiracy was motivated by a class-based animus.  Johnson, 40 F.3d at 839.  The Sixth Circuit has held that "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987).

In this case, Plaintiff generally alleges that Defendants conspired to violate his civil rights.  However, he alleges no facts to support a finding that there was any specific agreement among them to engage in any concerted action against him, and he does not indicate when or where the alleged conspiracy took place.  In the Court's view, Plaintiff's vague and conclusory allegations of a conspiracy do not suffice to state a colorable claim.  In addition, Plaintiff has completely failed to allege that the so-called conspiracy was motivated by any class-based animus.  He alleges only that Defendants conspired to violate his civil rights because he had previously filed lawsuits against them.  He does not allege that they conspired to violate his civil rights because he is African-American or a member of any other protected class.  Absent an allegation that the conspiracy was motivated by a class-based animus, Plaintiff's § 1985(3) claim must be dismissed.

### 3. State Law Claims

Plaintiff has also asserted state law claims of intentional infliction of emotional distress, defamation, and blacklisting against the individual CRC employees.  The Eleventh Amendment clearly bars the claims brought against CRC and its employees in their official capacities.  To the extent Plaintiff seeks recovery from the CRC employees in their individual capacities, this Court lacks jurisdiction to entertain those claims.  Ohio Revised Code § 2743.02(F) grants the Ohio

Court of Claims exclusive jurisdiction to determine whether a state employee should be stripped of the immunity granted by Ohio Revised Code § 9.86.  For these reasons, the Court dismisses all of Plaintiff's state law claims brought against the Prison Defendants.

### C. OCRC's Motion to Dismiss

Plaintiff alleges that OCRC failed to adequately investigate his complaint of retaliation and unfairly determined that there was "no probable cause" for that complaint.[5]  Plaintiff further alleges that, in doing so, OCRC participated in the alleged conspiracy to violate his civil rights.  Plaintiff seeks $50 million in punitive damages from OCRC, a letter of apology, the termination of the OCRC employees who participated in the investigation, special training for investigators and supervisors, and other injunctive relief.  Pursuant to Federal Rule of Civil Procedure 12(c), OCRC has moved to dismiss Plaintiff's claims because: (1) this Court lacks jurisdiction to review the "no probable cause" determination; and (2) the Eleventh Amendment bars Plaintiff's claims.

As OCRC correctly points out, the Ohio courts of common pleas have exclusive jurisdiction to review a final order of the OCRC.  Ohio Revised Code § 4112.06(A) provides:

> Any complainant, or respondent claiming to be aggrieved by a final order of the commission, including a refusal to issue a complaint, may obtain judicial review thereof . . . in a proceeding as provided in this section. Such proceeding shall be brought in the common pleas court of the state within any county wherein the

---

[5] Although OCRC employees Foley and Garcia are included in the text of the Complaint, they are not named as defendants in this action and have not been served with a copy of the Complaint and Summons.

>       unlawful discriminatory practice which is the subject of the
>       commission's order was committed . . .

The statute further states, "[t]he jurisdiction of the court shall be exclusive." Ohio Revised Code § 4112.06(F). Therefore, to the extent Plaintiff challenges the OCRC's "no probable cause" determination and the adequacy of the investigation leading up to it, this Court lacks jurisdiction to consider his claim.

Plaintiff also alleges that OCRC conspired with the Prison Defendants to violate his civil rights and seeks relief under 42 U.S.C. § 1985(3). As OCRC correctly notes, this claim is barred by the Eleventh Amendment. In addition, as discussed earlier, Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a claim under § 1985(3). The Court therefore dismisses Plaintiff's § 1985(3) claim against OCRC.

### D. OCSEA's Motion to Dismiss

Finally, Plaintiff alleges that his labor union, OCSEA, has conspired with CRC and ODRC management to deny him fair and impartial union representation, has discriminated against him on the basis of race, and has retaliated against him for having previously filed complaints and lawsuits against the union. Plaintiff also alleges that OCSEA is "blacklisting" him, making it very difficult for him to obtain other employment. Plaintiff seeks $50 million in punitive damages against OCSEA.

OCSEA has moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[6] First, OCSEA argues that this Court lacks subject matter jurisdiction over Plaintiff's claims. According to OCSEA, although Plaintiff's claims are stated

---

[6] Because OCSEA has already filed an Answer, the Court construes OCSEA's motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

in a variety of ways, he essentially argues that OCSEA has violated its duty of fair and impartial representation by refusing to continue to represent him. Under state law, it is an "unfair labor practice" for a labor union to "[f]ail to fairly represent all public employees in a bargaining unit." Ohio Revised Code § 4117.11(B)(6). OCSEA notes that the State Employment Relations Board (SERB) has exclusive jurisdiction over claims of unfair labor practices filed in the public sector employment context. See Ohio Revised Code § 4117.12. See also Franklin County Law Enforcement Assoc. v. Fraternal Order of Police, 59 Ohio St. 3d 167, 170, 572 N.E.2d 87 (Ohio 1991).

Nevertheless, the Ohio Supreme Court has noted that "SERB does not have exclusive jurisdiction over every claim that can somehow be cast in terms of an unfair labor practice." Keller v. City of Columbus, 100 Ohio St. 3d 192, 195, 797 N.E.2d 964, 969 (Ohio 2003). Although Plaintiff's allegations against OCSEA can arguably be cast as an unfair labor practice, they can also be construed as violations of Title VII. Title VII makes it unlawful for a labor union to discriminate against an individual because of his race. 42 U.S.C. § 2000e-2(c)(1). The statute also makes it unlawful for a labor union to "discriminate against any member thereof . . . because he has opposed . . . an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The civil rights protected by Title VII exist independent of any rights created by Ohio's collective bargaining laws. Therefore, Ohio courts have held that even though SERB has exclusive jurisdiction over claims of unfair labor practices, courts are not prohibited from exercising jurisdiction over federal civil rights claims. See Weinfurtner v. Nelsonville-York

Sch. Dist. Bd. of Educ., 77 Ohio App. 3d 348, 356, 602 N.E.2d 318, 323 (Ohio Ct. App. 1991) (holding that "since federal civil rights claims exist independently of R.C. Chapter 4117," common pleas courts have jurisdiction over claims brought under 42 U.S.C. § 1983); Brannen v. Kings Local Sch. Dist. Bd. of Educ., 144 Ohio App. 3d 620, 629, 761 N.E.2d 84, 91 (Ohio Ct. App. 2001) ("Generally, a common pleas court has jurisdiction to consider a complaint that asserts a violation of rights independent of a collective bargaining agreement or R.C. Chapter 4117, such as a deprivation of federal constitutional rights.")

To the extent that Plaintiff's Complaint can be construed to allege that OCSEA violated Title VII by treating him less favorably than it does white union members and by retaliating against him because he previously filed a discrimination suit against OCSEA, the Court rejects OCSEA's argument that SERB has exclusive jurisdiction over these claims.

To the extent that Plaintiff's Complaint could be construed to include a § 1985(3) conspiracy claim against OCSEA, that claim is dismissed because, as previously discussed, Plaintiff has simply failed to state a claim upon which relief can be granted.

As to Plaintiff's claim that OCSEA has participated in "blacklisting" him, and has interfered with his relationship with prospective employers, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Ohio law imposes liability on employers who disclose information about an employee's job performance to prospective employers "with the knowledge that it was false, with the deliberate intent to mislead the prospective employer or another person, in bad faith, or with malicious purpose." Ohio Revised Code § 4113.71(B)(1). Labor unions, however, are not subject to liability under this statute. Moreover, Plaintiff's Complaint is devoid of any allegations that OCSEA had any contact whatsoever with any

15

prospective employers. For these reasons, the Court grants OCSEA's motion to dismiss the blacklisting claim.

### III. Conclusion

For the reasons stated above, the Court **GRANTS IN FULL** OCRC's motion to dismiss (Doc. 21), and **DISMISSES** Plaintiff's claims against OCRC **WITHOUT PREJUDICE**. The Court **GRANTS IN PART and DENIES IN PART** OCSEA's motion to dismiss (Doc. 20) and the Prison Defendants' motion for judgment on the pleadings (Doc. 22).

The following claims are **DISMISSED WITH PREJUDICE**:

(1) Plaintiff's Title VII claims brought against the Prison Defendants in their individual capacities;

(2) Plaintiff's 42 U.S.C. § 1985(3) claims against all Defendants; and

(3) Plaintiff's state law claim of blacklisting against OCSEA.

Plaintiff's state law claims of intentional infliction of emotional distress, defamation, and blacklisting, brought against Defendants Lewis, Foster, Holmes, and Lamneck are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff's Title VII claims of discrimination and retaliation brought against OCSEA, CRC, ODRC, and against the Prison Defendants in their official capacities remain pending. However, the Court's decision should not be considered by Plaintiff or any of the remaining Defendants as any indication of the Court's position regarding the merit, or lack of merit, of any of Plaintiff's remaining claims.

**IT IS SO ORDERED.**

Date: September 19, 2008                         **/s/ John D. Holschuh**
                                                         John D. Holschuh, Judge
                                                         United States District Court